**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
.................................................................X

FINA FLORES

                     Plaintiff,

        - against -

CITY OF NEW YORK, NEW YORK CITY HEALTH
& HOSPITALS CORPORATION and MAXINE SIMPSON,
in her individual and professional capacities,

                  Defendants.
.................................................................X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

       Plaintiff Fina Flores, by and through her attorneys, Filippatos PLLC, hereby complains of Defendants City of New York, New York City Health & Hospitals Corporation ("NYCHHC" or the "Company"), Maxine Simpson (together, "Defendants"), upon personal knowledge, as well as information and belief, by alleging and averring as follows:

## PRELIMINARY STATEMENT

       1.    Plaintiff Fina Flores's experience at New York City Health & Hospitals Corporation -- the largest public healthcare system in the United States encompassing the operation of 11 acute care hospitals in the City of New York -- was marred by the Company's unfortunate refusal to engage in an interactive process to provide her reasonable accommodations for her disabilities — hip dysplasia and herniated discs — on multiple occasions. Despite Plaintiff's decade of expertise within the labor relations industry, the Defendants, most notably Maxine Simpson, repeatedly berated Plaintiff because of her disability, including by calling her a **f\*\*\*ing cripple.**

       2.    After Plaintiff voiced her concerns to the NYCHHC Human Resources department ("HR"), and later the Equal Employment Opportunity ("EEO") office about Defendant Simpson's

harassment and discrimination, Defendant Simpson unlawfully retaliated against Plaintiff by falsely writing a negative performance evaluation about her -- which she later changed -- as well as by giving Plaintiff clerical assignments rather than assignments commensurate with her title and failing to adequately train Plaintiff. Ultimately, this continuous course of unlawful conduct by Defendants led directly to Plaintiff's discriminatory and retaliatory termination on January 25, 2021, just weeks after she made a request for FMLA leave for hip surgery back on January 4, 2021.

3.      As a result, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendants for violating her rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq., as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 ("ADAA"); the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq., as amended by the Families First Coronavirus Response Act of 2020, Pub. L. No. §§ 116-127 (FFCRA"), the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code §§ 8-101, et. seq. ("NYCHRL").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under the ADA and FMLA.

5.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under New York law pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as NYCHHC is a domestic corporation doing business in the State of New York and a substantial part of the events

or omissions giving rise to this action, including the unlawful discrimination and retaliation alleged herein, occurred in this district.

## ADMINISTRATIVE REQUIREMENTS

7.     On June 4, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA arising out of the facts described herein. On June 15, 2023, the EEOC issued Ms. Flores a Notice of Right to Sue. Plaintiff has asserted her ADA claims herein within 90 days of receipt of his Notice of Right to Sue.

8.     Pursuant to NYCHRL § 8-502, unless Defendants waive service, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007, and the New York City Law Department, Office of the Corporation Counsel, 100 Church St, New York, NY 10007, thereby satisfying the notice requirements of that section.

9.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

10.     Plaintiff is an adult resident of the State of New York and County of Queens. Plaintiff was a Labor Relations Specialist at NYCHHC and worked at the Company from on or about May 29, 2019, until her unlawful firing on January 25, 2021.  At all relevant times, Ms. Flores met the definition of "employee" and/or "eligible employee" under all applicable statutes.

11.     At all times relevant hereto, Defendant NYCHHC was and is a public benefit corporation established by the New York State Legislature pursuant to the Health and Hospitals Corporation Act and is the largest public healthcare system in the United States. NYCHHC operates 11 acute care hospitals in the City of New York, including in Elmhurst and Jamaica,

Queens. NYCHHC also operates nursing homes, diagnostic and treatment centers, and community-based primary care sites. NYCHHC maintains its principal places of business at 346 Broadway, 125 Worth Street, and 55 Water Street in the borough of Manhattan. Upon information and belief, NYCHHC employs over 35,000 individuals on a full-time or full-time equivalent basis in the United States. At all relevant times, NYCHHC met the definition of an "employer" and/or a "covered employer" under all relevant statutes.

12.     At all times relevant hereto, Defendant Maxine Simpson was either a Labor Relations Specialist, the Acting Director of Labor Relations, or the Director of Labor Relations at NYCHHC. Defendant Simpson functioned as Plaintiff's direct supervisor beginning in August 2019 and had the ability to affect the terms and conditions of Plaintiff's employment. Defendant Simpson issued Plaintiff's assignments, trained her, supervised her, and required Plaintiff to seek her permission for absences. Furthermore, Defendant Simpson directly participated in the unlawful actions taken against Plaintiff, including acts of retaliation, inadequate training, and the denial of a reasonable accommodation for Plaintiff. At all relevant times, Ms. Simpson met the definition of a "person," "employer" and/or a "covered employer" under all relevant statutes. Upon information and belief, Defendant Simpson is a resident of the State of New York, County of Brooklyn.

**FACTUAL ALLEGATIONS**

**I.      Plaintiff is Hired by Defendant NYCHHC**

13.     On or about May 29, 2019, Plaintiff was hired by NYCHHC as a Labor Relations Specialist to work at two hospitals in Queens: one in Elmhurst ("NYCHHC Elmhurst") and the other in Jamaica ("NYCHHC Jamaica"). By then, Plaintiff had amassed over ten years of experience in the field of Legal, Human Resources, and Labor Relations.

14.     Prior to joining NYCHHC, Plaintiff had been a Human Resources Manager/ Labor Relations Specialist at ABM (NYC Schools Support Services) ("ABM"), where she managed labor relations including grievance procedures, disciplinary actions, and negotiations with union representatives. Plaintiff also oversaw seasonal hiring, staff management, onboarding, salary decisions, and payroll support while ensuring effective induction and training processes.

15.     As a Labor Relations Specialist at NYCHHC, Plaintiff was responsible for investigating and processing employee grievances handled by the Central Office of Labor Relations, preparing reports and providing recommendations for their resolution, interpreting contracts and agreements and Labor Relations Orders dealing with wages, hours, working conditions and all other matters within their purview, general employee relations, and personnel management activities.

16.     Plaintiff's direct supervisor, Director of Labor Relations Marc Hanan – who hired her – left NYCHHC two weeks prior to the commencement of her employment.

17.     In July 2019, Charles Johnson was appointed Director of Labor Relations for NYCHHC Elmhurst and became Plaintiff's direct supervisor at NYCHHC Elmhurst.  Defendant Simpson continued to supervise Plaintiff at NYCHHC Jamaica.

## II.     Defendant Simpson Denies Plaintiff a Reasonable Accommodation After a Car Accident

18.     As the result of a car accident on or about July 5, 2019, Plaintiff experienced serious bodily injuries, including an injured wrist and three herniated discs in her neck. Plaintiff's physician prescribed physical therapy three times per week for three months to treat her injuries from her car accident.

19.     Plaintiff's serious bodily injuries constituted a disability under the ADA.  Said injuries caused her chronic pain that impaired her major life activities of sleeping, standing, sitting, walking, grasping, and general bodily movement.

20.     Plaintiff's serious bodily injuries constituted a serious health condition under the FMLA as well, as she needed continuing treatment from various health care professionals.

21.     Plaintiff asked Defendant Simpson for permission to leave work one hour early three times per week to attend physical therapy to address her injuries from her car accident. However, Defendant Simpson made Plaintiff feel uncomfortable for making this request and told Plaintiff she could only leave work one hour early three times per week for six weeks – although Plaintiff's physician had prescribed three months of physical therapy.

22.     Defendant Simpson failed to engage in the interactive process or a cooperative dialogue with Plaintiff, although she had clearly expressed the need for a reasonable accommodation.

23.     Defendant Simpson failed to issue a final written determination identifying the accommodation that had been granted to Plaintiff and any accommodation that had been denied.

24.     Plaintiff then spoke to Mr. Johnson about her need to leave work one hour early three times per week for the remaining time that she needed to continue physical therapy to address her injuries from the car accident. Mr. Johnson told her she could work from 8 a.m. to 4 p.m. two or three days per week at NYCHHC Elmhurst, depending on the week, so she could leave early to attend physical therapy. Mr. Johnson failed to issue a final written determination identifying the accommodation that had been granted to Plaintiff and identifying any accommodation that had been denied to Plaintiff.

**III.     Plaintiff Continues to Suffer Discrimination After Defendant Simpson Officially Becomes Plaintiff's Direct Supervisor at NYCHHC**

25.     In or around September 2019, Mr. Johnson left NYCHHC, at which point Defendant Simpson became Acting Director of NYCHHC Elmhurst and NYCHHC Jamaica. Thereafter, Defendant Simpson told Plaintiff that she could no longer work from 8 a.m. to 4 p.m. two or three days per week at NYCHHC Elmhurst to accommodate her physical therapy needs.

26.     Neither Defendant Simpson nor anyone else at Defendant NYCHHC offered Plaintiff any other accommodation or engaged in the interactive process or cooperative dialogue with Plaintiff regarding her request for a reasonable accommodation to attend physical therapy.

27.     Neither Defendant Simpson nor anyone else at Defendant NYCHHC issued a final written determination identifying any accommodation denied to Plaintiff, nor did they inform Plaintiff of her rights regarding her request for an accommodation to attend physical therapy.

28.     As a result, Plaintiff was unable to complete the physical therapy regimen as directed by her physician the treat her injuries, including those to her neck and wrist.

29.     Furthermore, Plaintiff, who had to wear a brace on her right wrist as a result of her injuries from the car accident, was belittled and demeaned by Defendant Simpson, who told her *that she could not write fast enough*.  On one occasion, Plaintiff was forced to leave Defendant Simpson's office in tears because she was in so much pain and Defendant Simpson barked at her for supposedly not taking notes quickly enough to keep up with the proceedings at a hearing. *Defendant Simpson told Plaintiff that if she could not handle the job, she should leave.*

30.     In or around November 2019, Defendant Simpson was appointed Director of Labor Relations for NYCHHC Elmhurst and Jamaica and officially became Plaintiff's direct supervisor.

31.     On two occasions in November 2019, Plaintiff met with Jessica Hart-Bittner, Assistant Personnel Director in NYCHHC's HR department and engaged in protected conduct.

Specifically, during these meetings, Plaintiff advised Ms. Hart-Bittner that Defendant Simpson had refused to allow her to attend physical therapy sessions as prescribed by her physician. Plaintiff further advised Ms. Hart-Bittner of Defendant Simpson's abuse and harassment based on her disabilities.

32.     At no time did Ms. Hart-Bittner inform Plaintiff that she was entitled to request a reasonable accommodation to attend physical therapy and/or refer Plaintiff to the proper individual(s) at Defendant NYCHHC who could assist her with such request.  At no time did Ms. Hart-Bittner engage in the interactive process or a cooperative dialogue with Plaintiff, nor did she issue a final written determination identifying any accommodation granted or denied.

33.     Ms. Hart-Bittner also failed to inform Plaintiff that she could file a complaint against Defendant Simpson with NYCHHC's EEO Department or other statutory rights under which she was protected. Instead, Ms. Hart-Bittner advised Plaintiff to meet with Defendant Simpson on her own to try to resolve whatever issues existed between them.

34.     Plaintiff then met with Defendant Simpson as advised by Ms. Hart-Bittner. Defendant Simpson yelled at Plaintiff and stated that she was aware that Plaintiff had spoken to Ms. Hart-Bittner and therefore she could not trust Plaintiff. Shocked, Plaintiff responded that she had been injured in a terrible car accident and Defendant Simpson's belittling of her affected her ability to work. Plaintiff also told Defendant Simpson that she was born with hip dysplasia (another disability), and that she still regularly worked well beyond her normal working hours.

35.     In fact, Defendant Simpson had seen Plaintiff sit on a cushion to support her hip and often stand up while working to ease the pain in her hip. ***Defendant Simpson then told Plaintiff that "maybe this line of work was not for [her]."***

36.     In January 2020, a new Labor Relations Specialist named Nadia Davis began working at NYCHHC Elmhurst.   At this point, Plaintiff worked exclusively for NYCHHC Jamaica.

37.     In March 2020, Plaintiff began working remotely four days per week due to the COVID-19 pandemic.

38.     On June 3, 2020, Ms. Simpson issued Plaintiff a performance evaluation.  Plaintiff was shocked to see several negative comments in the evaluation, chief among them that she somehow suffered from "excessive absenteeism," which was flagrantly false and discriminatory.

39.     Plaintiff asked Ms. Simpson for specific examples of her supposed absenteeism, and later requested her timesheets. Ultimately, Ms. Simpson replaced this criticism in the evaluation with the following: "Fina is customarily punctual for work and has tried to schedule personal time off in advance to limit disruption to the operations."

40.     Plaintiff subsequently contacted Tonya Morgan, Senior Director of Labor Relations, to express her concerns about the retaliatory evaluation.

41.     Plaintiff complained that Defendant Simpson falsely accused Plaintiff of being excessively absent which allegedly affected the operations of the department.  In fact, any absences were for Plaintiff's physical therapy and doctor appointments – a fact about which Ms. Simpson was aware.

42.     Plaintiff further also expressed her trepidation about asking Defendant Simpson for FMLA-protected leave for hip surgery.  She also complained that Defendant Simpson was not training her adequately for her role and was instead giving her clerical assignments rather than substantive assignments commensurate with her title.  Plaintiff also complained that Defendant Simpson was harassing and abusive towards her.

43.     From this list of protected complaints and concerns, Ms. Morgan told Plaintiff that she could only help her with training. At no time did Ms. Morgan inform Plaintiff that she was entitled to request a reasonable accommodation for a disability or refer Plaintiff to the proper individual(s) at Defendant NYCHHC who could assist her with such a request.

44.     Ms. Morgan also failed to engage in the interactive process or a cooperative dialogue with Plaintiff, and at no time did she issue a final written determination identifying any accommodation granted or denied.

45.     Importantly, Ms. Morgan also failed to notify Plaintiff about her right to take intermittent or continuous protected leave to attend physical therapy, or that she could file a complaint against Defendant Simpson with NYCHHC's EEO Department.

46.     To add insult to injury, Plaintiff never received further training as she had been promised.

47.     Plaintiff then began to manifest symptoms of extreme stress, including as high blood pressure (i.e., hypertension) and high blood sugar levels.

48.     On October 8, 2020, Plaintiff emailed NYCHHC Labor Relations attorney Jonathan Wangel, Esq. to complain about Defendant Simpson's treatment, but he never replied.

49.     Also, in October 2020, Plaintiff advised Ms. Luke that she needed surgery to repair herniated discs in her neck caused by the car accident. She expressed her trepidation about taking a leave because she was afraid that Defendant Simpson would fire her. Ms. Luke failed again to advise Plaintiff that she could file a complaint with the EEO Department.

50.     Plaintiff also told Ms. Luke that she would need to take a second FMLA leave for hip replacement surgery following her neck surgery, and that when she returned to work following

neck surgery, she would need to request a reasonable accommodation to work from home due to the pain in her hip.

51.     In November 2020, Plaintiff began to suffer severe migraine headaches and pain caused by the herniated discs in her neck.

52.     One day in November 2020, Defendant Simpson instructed Plaintiff to come to work at 7 a.m. to conduct an interview. Plaintiff responded that she was suffering from severe migraine headaches due to the herniated discs in her neck.  Nonetheless, Defendant Simpson mandated Plaintiff to come to work at 7 a.m. the next morning.

53.     Plaintiff arrived at work the next day feeling very ill and told Defendant Simpson about her severe headache and how she felt as if she was going to pass out.  Defendant Simpson still ordered Plaintiff to continue working.

54.     With regard to her FMLA leave request, in late October 2020, an NYCHHC employee named Diana Wong helped Plaintiff complete paperwork for her FMLA leave for her neck surgery. Although Plaintiff had originally scheduled her neck surgery for on or about November 19, 2020, Defendant Simpson told her that, "by law," she was supposedly required to submit her FMLA paperwork at least 30 days in advance of when the leave began. Defendant Simpson further told Plaintiff that she (Defendant Simpson) had already been approved for a two-week vacation during the timeframe of Plaintiff's requested leave, and that Plaintiff could not be out of work during the same timeframe. As a result, Plaintiff had to delay her much needed surgery to December 2020.

55.     Despite Defendant Simpson's misinformation, intimidation, and outright obstruction, Plaintiff was ultimately approved for FMLA leave for her neck surgery from December 14, 2020, through January 3, 2021.

56.     On January 4, 2021, Plaintiff returned to work.

57.     Upon Plaintiff's return, Defendant Simpson called a meeting with Plaintiff and Ms. Minaya, during which she falsely accused Plaintiff of not having had surgery during her leave. When Plaintiff showed Defendant Simpson and Ms. Minaya the scar on her neck from her surgery, Defendant Simpson rolled her eyes.

58.     Plaintiff reminded Defendant Simpson that she needed to take an additional FMLA leave for her hip replacement surgery, as she was in tremendous pain from the deterioration of her hip. Plaintiff also requested a reasonable accommodation to work from home three times per week until such time that she was approved to have her hip surgery.

59.     Defendant Simpson summarily denied her request to work from home – with no interactive process or cooperative dialogue with Plaintiff, and no issuance of a final written determination identifying any accommodation granted or denied.

60.     That same day, January 4, 2021, Plaintiff spoke to Ms. Luke, who advised her that she could request a reasonable accommodation through the NYCHHC EEO Department, who would provide Plaintiff with a Reasonable Accommodation Request Form. Ms. Luke told Plaintiff not to fear losing her job.

61.     During the week of January 4, 2021, due to construction in the NYCHHC Jamaica parking lot, Plaintiff had to park her car further away than normal and walk a greater distance to reach her office, which was obviously difficult for her because of the pain in her hip.

62.     On January 8, 2021, Plaintiff asked Defendant Simpson for permission to work remotely the following week as a reasonable accommodation so that she would not have to walk the additional distance and exacerbate her hip problems which were causing her tremendous pain. Defendant Simpson once again refused her request off hand. Plaintiff implored Defendant

Simpson, reminding her how she is able to spend even more time working when she is at home by being able to avoid her commute.

63.     Defendant Simpson responded by cruelly telling Plaintiff that "**being a b\*\*ch is not illegal,**" and "**you are such a f\*\*\*ing cripple. I run the show here.**"

64.     Although Defendant Simpson refused to allow Plaintiff to work remotely, on Monday, January 11, 2021, Defendant Simpson herself worked remotely.

**IV.     Plaintiff's Complaints Regarding Defendant Simpson's Unlawful Conduct Fall on Deaf Ears as the Onslaught of Discriminatory and Retaliatory Conduct Continued, <u>Culminating in Her Unlawful Termination</u>**

65.     On January 12, 2021, while working at NYCHHC Jamaica, Plaintiff made copies of certain documents from her personal family physician. Plaintiff needed to make these copies so that her family physician could prepare a letter for her children's after-school programs on the physician's letterhead.

66.     Plaintiff inadvertently left the originals of these documents in the photocopy/scanner machine after copying them. Defendant Simpson found them however, and confronted Plaintiff about them, baselessly accusing Plaintiff of somehow falsifying the paperwork for her December 2020 FMLA leave for her neck surgery and/or falsifying paperwork for open misconduct cases.

67.     Plaintiff denied these false and baseless allegations. Nonetheless, Defendant Simpson demanded that Plaintiff relinquish the documents, which she then scanned and emailed to Andrea Chilaka, NYCHHC Senior Counsel, and Ms. Morgan – in clear and obvious violation of her children's privacy rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

68.     Ms. Chilaka stated that Mr. Wangel would be reviewing Plaintiff's personal health documents, which were never returned to her.

69.     On January 13, 2021, Plaintiff sent Ms. Luke her completed Reasonable Accommodation Request form in relation to her hip dysplasia. Plaintiff informed Ms. Luke that her physician would be sending the supporting documentation directly to Ms. Luke. Plaintiff also informed Ms. Luke that she wanted to file an EEOC complaint against Defendant Simpson.

70.     On January 14, 2021, when Plaintiff arrived at work, she received an email from Defendant Simpson stating that she may have been exposed to COVID-19. Plaintiff was instructed to get tested for the virus and not return to work until January 25, 2021.

71.     On January 18, 2021, one of Plaintiff's co-workers notified her that Defendant Simpson had been snooping around Plaintiff's office without her permission.

72.     On January 25, 2021, Plaintiff returned to work at NYCHHC Jamaica. Andrew Campbell, Regional Director of Human Resources for NYCHHC Jamaica, and Anna Padilla, NYCHHC Human Resources Business Partner/Department Director, presented Plaintiff with a letter from Michael Katzab, NYCHHC Director of Human Resources and Talent Acquisition. The letter stated that Plaintiff's services were no longer required effective immediately; in other words, Plaintiff was being fired. The letter gave no information about the reason for her termination.

73.     On January 28, 2021, three days after she was unlawfully fired, Ms. Luke emailed Plaintiff an EEO internal complaint form. Ms. Luke's excuse for the two-week delay in emailing Plaintiff this form was that she was supposedly "in a drafting cocoon."

74.     As a result of her unlawful termination, Plaintiff lost her health insurance and had to purchase private health insurance for herself and her family which needed 30 days to be

activated. As a result, Plaintiff was forced to delay her hip replacement surgery until March 9, 2021, causing her additional pain and suffering.

## AS AND FOR A FIRST CAUSE OF ACTION
### Discrimination in Violation of the ADA
#### *Against Defendant NYCHHC*

75.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

76.     By the actions described above, among others, Defendant NYCHHC has violated the ADA by refusing to provide Plaintiff with reasonable accommodations, inasmuch as (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) NYCHHC is a covered employer under the statute and had notice of her disability; (3) with reasonable accommodations, Plaintiff could perform the essential functions of her job; and (4) NYCHHC has refused to make such accommodations.

77.     As described above, Defendant NYCHHC has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment because of her disabilities, including, but not limited to, providing inadequate training, refusing to grant Plaintiff a reasonable accommodation following her car accident, persisting in acts of discrimination and retaliation, and ultimately effectuating the unlawful termination of her employment shortly after requesting an accommodation to work from home due to her disability.

78.     As a direct and proximate result of NYCHHC's unlawful conduct in violation of the ADA, Plaintiff has suffered, and will continue to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages.

79.     As a direct and proximate result of NYCHHC's unlawful conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, mental anguish, and emotional distress, for which she is entitled to an award of damages, to the greatest extent permitted under law.

80.     Defendant NYCHHC's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Retaliation in Violation of the ADA**
***Against Defendant NYCHHC***

81.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

82.     By the actions described above, among others, Defendant has retaliated against Plaintiff in violation of ADA for engaging in protected activity, including by denying her a reasonable accommodation, and ultimately terminating her several weeks later.

83.     As a direct and proximate result of NYCHHC's unlawful conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, mental anguish, and emotional distress, for which she is entitled to an award of damages, to the greatest extent permitted under law.

84.     Defendant NYCHHC's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Interference in Violation of the FMLA**
***Against All Defendants***

85.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

86.     Section 2615(a)(1) of the Family Medical Leave Act, states in pertinent part: "Interference with rights. Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

87.     Upon information and belief, Plaintiff and Defendant NYCHHC are subject to the FMLA, respectively, as an eligible employee and covered employer.

88.     By the actions described above, among others, Defendants have interfered with Plaintiff's rights under the FMLA by depriving her of her right to take intermittent leave to attending physical therapy as prescribed by her physician, and resulting in a deterioration of her physical condition, requiring the postponement of her surgery to address her disability, and ultimately terminating her employment on January 25, 2021.

89.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and will continue to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages, liquidated damages, and other relief.

90.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Retaliation in Violation of the FMLA
### *Against All Defendants*

91.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

92.     To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) she exercised rights protected under the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (quotation omitted).

93.     Plaintiff exercised rights protected under the FMLA by requesting leave on or about January 4, 2021, and was terminated weeks later with no explanation.

94.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and will continue to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages, liquidated damages, and other relief.

95.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS AND FOR A FIFTH CAUSE OF ACTION
**Discrimination in Violation of the New York State Human Rights Law**
***Against All Defendants***

96.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

97.     As described above, Defendants have discriminated against Plaintiff on the basis of her disability in violation of the New York State Human Rights Law by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment and disparate treatment based on her disability.

98.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and will continue to suffer, economic damages, mental anguish, and emotional distress for which he is entitled to an award of damages.Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the New York State Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Retaliation in Violation of the New York State Human Rights Law**
***Against All Defendants***

99.     Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

100.    By the actions described above, among others, Defendants retaliated against Plaintiff for engaging in protected activity related to disability. Plaintiff engaged in protected activity by requesting reasonable accommodations, by complaining that she was not provided with reasonable accommodations, and by raising her disability in complaints to NYCHHC

101.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and will continue to suffer, economic damages, mental anguish, and emotional distress for which he is entitled to an award of damages.

102.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the New York State Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**Aiding and Abetting Violations of the New York State Human Rights Law**
*Against Defendant Simpson*

103.    Plaintiff hereby repeats, reiterates, and re-alleges each and every previous allegation as if fully set forth herein.

104.    By the action described above, Defendant Simpson knowingly or recklessly aided and abetted the discrimination that has been committed against Plaintiff in violation of the New York State Human Rights Law.

105.    As a direct and proximate result of the unlawful conduct aided and abetted by Defendants Simpson in violation of the New York State Human Rights Law, Plaintiff has suffered, and will continue to suffer, economic damages, mental anguish, and emotional distress for which she is entitled to an award of damages.

106.    The unlawful discriminatory and retaliatory actions aided and abetted by Defendant Simpson constitute malicious, willful, and wanton violations of the New York State Human Rights Law, for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
**Discrimination in Violation of New York City Human Rights Law**
*Against All Defendants*

107.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully and completely stated herein.

108.    The NYCHRL makes it unlawful for an employer to discriminate against an employee in the terms, conditions or privileges of employment based on gender, race, national origin, or familial status.

109.    NYC Administrative Code 8-107(1) provides that: "It shall be an unlawful discriminatory practice: (a) [f]or an employer or an employee or agent thereof, because of the

actual or perceived … disability… of any person: (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

110.    To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive.  The NYCHRL must be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible to include differential treatment of a much broader degree than required under the NYSHRL.

111.    Defendants discriminated against Plaintiff in the terms and conditions of her employment based on her disability in violation of the NYSHRL by, including, but not limited to, refusing to engage in an interactive process to address her disability, refusing to adequately investigate her claims of discrimination, and ultimately terminating her for her request to take leave to have hip surgery.

112.    Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected rights.

113.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A NINTH CAUSE OF ACTION
**Retaliation in Violation of New York City Human Rights Law**
*Against All Defendants*

114.　Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully and completely stated herein.

115.　By the actions described above, among others, Defendant has retaliated against Plaintiff in violation of the NYCHRL for engaging in protected activity, including by denying her a reasonable accommodation, and ultimately terminating her several weeks later.

116.　As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff suffered adverse employment consequences by the conduct of its employees and managers, including loss of wages, professional opportunities, and other valuable benefits and emoluments of employment, as well as severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, exacerbation of existing medical conditions and personal sickness, loss of enjoyment of life and damage to her reputation.

## AS AND FOR A TENTH CAUSE OF ACTION
**Aiding And Abetting Unlawful Discrimination and Retaliation in Violation of the NYCHRL**
*Against Defendant Simpson*

117.　Plaintiff repeats and re-alleges the allegations contained in all the preceding paragraphs of this Complaint as if set forth herein at length.

118.　By the actions described above, among others, Defendant Simpson knowingly or recklessly aided and abetted and directly participated in the unlawful discrimination and/or retaliation to which Plaintiff was subjected in violation of the NYCHRL.

119.　As a direct and proximate result of the unlawful conduct aided and abetted by Defendants Simpson in violation of the NYCHRL, Plaintiff has suffered, and will continue to

suffer, economic damages, mental anguish, and emotional distress for which she is entitled to an award of damages.

120.    The unlawful discriminatory and retaliatory actions aided and abetted by Defendant Simpson constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.    Declaring that the actions, conduct and practices complained of herein violate the laws of the United States and State of New York;

B.    Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' discrimination in employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain, and suffering in an amount to be determined at trial;

D.    Awarding Plaintiff liquidated damages;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff pre-judgment and post-judgment interest as applicable;

G.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  September 13, 2023
      White Plains, New York         Respectfully submitted,

                                  **FILIPPATOS PLLC**

                                  By: _____
                                     Tanvir H. Rahman

                                  199 Main Street, Suite 800
                                  White Plains, NY 10601
                                  Tel: 914-984-1111, ext. 505
                                  Fax: 914-984-1111
                                  trahman@filippatoslaw.com

                                  *Counsel for Plaintiff*